ORIGINAL

16 MAG 0233

Approved: _____
          JESSICA LONERGAN / THOMAS MCKAY
          Assistant United States Attorneys

Before:   HONORABLE JAMES C. FRANCIS, IV
          United States Magistrate Judge
          Southern District of New York

U.S. DISTRICT COURT FILED
JAN 12 2016
S.D. OF N.Y.

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA           :   SEALED COMPLAINT

          - v. -                   :   Violation of 21 U.S.C.
                                       § 846
DAMON LUCKY and                    :
RONNELL COOMBS                         COUNTY OF OFFENSE:
     a/k/a "Chewy,"                :   BRONX

                    Defendants.    :

- - - - - - - - - - - - - - - - - x

DOC # _____

SOUTHERN DISTRICT OF NEW YORK, ss.:

    IAN TOMAS, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

                        COUNT ONE

    1.   From in or about October 2015 up to and including in or about January 2016, in the Southern District of New York and elsewhere, DAMON LUCKY and RONNELL COOMBS, a/k/a "Chewy," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2.   It was a part and an object of the conspiracy that DAMON LUCKY and RONNELL COOMBS, a/k/a "Chewy," the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.  The controlled substance that DAMON LUCKY and RONNELL COOMBS, a/k/a "Chewy," the defendants, conspired to distribute and possess with the intent to distribute was one kilogram and more of mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charges, are, in part, as follows:

4.  I am a Special Agent with the FBI. I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5.  From my participation in this investigation, I have learned, in substance and in part, that this investigation has involved the use of a cooperating witness ("CW-1"). CW-1 has been charged with federal crimes and is cooperating with law enforcement in the hope of obtaining leniency at sentencing. CW-1's information has proven reliable and has been corroborated in part by, among other things, physical surveillance conducted by FBI agents and consensually recorded telephone calls.

6.  On or about October 13, 2015, at the direction of FBI agents, CW-1 obtained a sample of heroin from DAMON LUCKY, the defendant (the "Sample Meeting"). CW-1 recorded the meeting with LUCKY using an audio recorder. I and other agents surveilled the meeting between CW-1 and LUCKY. Based on my debriefing of CW-1, my review of the audio recording, my observations on surveillance, and my conversations with other agents, I have learned the following:

a.  I and other agents met with CW-1, searched CW-1 and CW-1's car (the "CW-1 Car") for contraband with negative results, and provided CW-1 with an audio recorder.

2

b. CW-1 then drove to the vicinity of 168 Stuyvesant Avenue in Brooklyn, where CW-1 was supposed to meet with LUCKY. I and another agent followed the CW-1 Car until approximately a block from 168 Stuyvesant Avenue.

c. At approximately 4:15 p.m., other agents observed a red Chevrolet Equinox with New York license plate FHE1403 (the "Equinox") arrive in the vicinity of 168 Stuyvesant Avenue. LUCKY[1] exited the Equinox and entered 168 Stuyvesant Avenue.

d. At approximately 5:08 p.m., I and other agents observed LUCKY exit 168 Stuyvesant Avenue and enter the CW-1 Car.

e. LUCKY told CW-1, in substance and in part, that LUCKY could provide CW-1 with heroin at the price of $70 per gram or $3,920 for two ounces.

f. At approximately 5:37 p.m., I and other agents observed LUCKY exit the CW-1 Car and enter the front passenger side of a maroon SUV, subsequently identified as a Isuzu Rodeo with New York license plate GWM1370 (the "Rodeo"). At approximately 5:40 p.m., LUCKY returned to the CW-1 Car and sat in the front passenger seat.

g. LUCKY provided CW-1 with what appeared to be a sample of heroin. LUCKY also showed CW-1 a larger piece of a substance that appeared to be heroin, which LUCKY said that he would sell to CW-1.

h. At approximately 5:42 p.m., I and other agents observed LUCKY exit the CW-1 Car, and observed the CW-1 Car drive away. LUCKY then entered 168 Stuyvesant Avenue.

i. At approximately 5:55 p.m., I and other agents observed the Rodeo driving west on Lexington Avenue in Brooklyn, towards Manhattan.

j. Following the meeting with LUCKY, I and other agents met with CW-1, who returned the recording device and

---

[1] Based on information previously provided by CW-1, including LUCKY's full name and telephone number, agents had previously obtained a photograph of LUCKY. Agents compared the appearance of the person they observed on surveillance to the previously obtained photograph and believed that the person on surveillance was LUCKY.

provided us with a small baggie containing a brown, rocky substance. The sample field-tested positive for the presence of heroin and weighed slightly less than one gram.

7. Based on my debriefings of CW-1, I have learned that DAMON LUCKY, the defendant, told CW-1 that he was staying at 168 Stuyvesant Avenue.

8. On or about October 14, 2015, at the direction of FBI agents, CW-1 purchased two ounces (or approximately 52 grams) of heroin from DAMON LUCKY, the defendant (the "First Purchase"). CW-1 recorded the meeting with LUCKY using an audio recorder. I and other agents surveilled the meeting between CW-1 and LUCKY. Based on my debriefing of CW-1, my review of the audio recording, my observations on surveillance, and my conversations with other agents, I have learned the following:

    a. I and other agents met with CW-1, searched CW-1 and the CW-1 Car for contraband with negative results, and provided CW-1 with an audio recorder and $3,920.

    b. CW-1 then drove to the vicinity of 168 Stuyvesant Avenue. Agents followed the CW-1 Car until approximately a block from that location.

    c. At approximately 4:38 p.m., agents observed LUCKY exit 168 Stuyvesant Avenue and enter the CW-1 Car.

    d. LUCKY stated to CW-1, in substance and in part, that the heroin supplier would not come down from the Bronx until LUCKY had seen the money. CW-1 showed money to LUCKY. After seeing the money, at approximately, 4:40 p.m., LUCKY placed a telephone call. While waiting with CW-1, LUCKY placed a number of additional telephone calls. At approximately 6:48 p.m., LUCKY stated, in substance and in part, that the heroin supplier had arrived.

    e. At approximately 6:47 p.m., one or more agents observed the Rodeo on Lexington Avenue in the vicinity of 168 Stuyvesant Avenue. At approximately 6:48 p.m., LUCKY exited the CW-1 Car and walked towards Lexington Avenue. At approximately 6:51 p.m., LUCKY exited the Rodeo, which was parked on Lexington Avenue, and entered the CW-1 Car.

    f. LUCKY provided CW-1 with a plastic bag containing a brown, rocky substance and stated, in substance and in part,

4

that the substance was heroin. CW-1 provided LUCKY with approximately $3,920.

   g.   At approximately 6:52 p.m., one or more agents observed LUCKY exit the CW-1 Car and walk towards Lexington Avenue. At approximately 6:54 p.m., LUCKY entered the Rodeo.

   h.   At approximately 7:11 p.m., agents observed LUCKY and a male subsequently identified as RONNELL COOMBS, a/k/a "Chewy," the defendant,[2] exit the Rodeo together and enter a restaurant located in the vicinity of 1228 Fulton Street in Brooklyn.

   i.   I and other agents met with CW-1, who returned the audio recorder and provided us with the plastic bag containing a brown, rocky substance. The substance field-tested positive for the presence of heroin.

9.   On or about November 4, 2015, at the direction of FBI agents, CW-1 purchased two ounces (approximately 52 grams) of heroin from DAMON LUCKY, the defendant (the "Second Purchase"). CW-1 recorded the meeting with LUCKY using an audio recorder. I and other agents surveilled the meeting between CW-1 and LUCKY. Based on my debriefing of CW-1, my review of the audio recording, my observations on surveillance, and my conversations with other agents, I have learned the following:

   a.   I and other agents met with CW-1, searched CW-1 and the CW-1 Car for contraband with negative results, and provided CW-1 with an audio recorder and $5,000.

---

[2] As is described below, based on my review of the phone records for one of the cellphones used by LUCKY during the Sample Meeting and the First Purchase, I identified a cellphone number ending in 1496 (the "1496 Cellphone") as the telephone number of LUCKY's supplier. I provided the number of the 1496 Cellphone to an officer with the New York City Police Department ("NYPD"), who reviewed an NYPD database and learned that in connection with a prior arrest, COOMBS had provided the number of the 1496 Cellphone as his mother's telephone number. The NYPD officer also provided a photograph of COOMBS. Agents who had observed the driver of the Rodeo while on surveillance reviewed the photograph of COOMBS, and they believed that it was the same individual whom they saw exiting the Rodeo with LUCKY on October 14, 2015.

b. CW-1 then drove to the vicinity of 168 Stuyvesant Avenue. I and another agent followed the CW-1 Car until approximately a block from that location.

c. At approximately 10:45 a.m., one or more agents observed the Rodeo parked in front of 168 Stuyvesant Avenue. At approximately 11:12 a.m., LUCKY exited 168 Stuyvesant Avenue and entered the CW-1 Car. The CW-1 Car traveled around the corner and parked.

d. In substance and in part, LUCKY said that he had another heroin supplier and that he would get a sample of heroin from that supplier for CW-1. LUCKY further stated, in substance and in part, that if CW-1 purchased a larger quantity of heroin from the current supplier, a lower price could be negotiated. LUCKY gave CW-1 a plastic bag containing a brown, powdery substance in exchange for approximately $3,920.

e. At approximately 11:31 a.m., one or more agents observed LUCKY exit the CW-1 Car. At approximately 11:52 a.m., the Rodeo left the area.

10. I have reviewed registration information for the Rodeo and have learned that it is registered in the name of "Patricia A. Coombs."

11. Based on my review of an NYPD report, I have learned that RONNELL COOMBS, a/k/a "Chewy," the defendant, provided the name "Patricia Coombs" as the name of his "parent" in connection with an arrest.

12. I have reviewed License Plate Reader ("LPR") records for the Rodeo and have learned the following:

a. On the date of the Sample Meeting, the Rodeo traveled from the Bronx to Brooklyn, beginning at approximately 4:24 p.m., and crossing over the Brooklyn Bridge from Manhattan into Brooklyn at approximately 5:08 p.m., approximately half an hour before agents observed DAMON LUCKY, the defendant, entering the Rodeo.

b. On the date of the First Purchase, the Rodeo traveled from Manhattan to Brooklyn, beginning at approximately 6:15 p.m., and crossing over the Brooklyn Bridge from Manhattan into Brooklyn at approximately 6:24 p.m., approximately twenty minutes before agents observed the Rodeo in the vicinity of 168 Stuyvesant Avenue. The Rodeo left Brooklyn at approximately

8:44 p.m. and returned to the Bronx approximately twenty minutes later.

        c.    On the date of the Second Purchase, the Rodeo traveled from Manhattan to Brooklyn, exiting the Bronx into Manhattan at approximately 9:11 a.m., and crossing over the Brooklyn Bridge from Manhattan to Brooklyn at approximately 9:49 a.m., approximately one hour before agents observed the Rodeo in the vicinity of 168 Stuyvesant Avenue. The Rodeo left Brooklyn at approximately 12:17 p.m., less than half an hour after agents observed the Rodeo depart the vicinity of 168 Stuyvesant Avenue, and returned to the Bronx a little over an hour later.

    13.    CW-1 provided me with a cellular telephone number for DAMON LUCKY, the defendant, with a call number ending in 7564 (the "7564 Cellphone").

    14.    I have reviewed toll records for the 7564 Cellphone and have learned that at the times during the First Purchase when DAMON LUCKY, the defendant, was placing telephone calls, the 7564 Cellphone was in contact with a cellular telephone with a call number ending in 1496 (the "1496 Cellphone").

    15.    I have reviewed records for the 1496 Cellphone and have learned the following:

        a.    The 1496 Cellphone is subscribed to in the name of "Patricia Coombs."

        b.    At times corresponding to the times of the Sample Meeting, the First Purchase, and the Second Purchase, the 1496 Cellphone was using cellular towers in the vicinity of 168 Stuyvesant Avenue.

    16.    On or about December 8, 2015, an undercover officer ("UC-1") with the NYPD purchased approximately four ounces (approximately 100 grams) of heroin from DAMON LUCKY, the defendant (the "Third Purchase"). UC-1 recorded the meeting with LUCKY using an audio recorder. I surveilled the meeting between UC-1 and LUCKY. Based on my debriefing of UC-1's supervisor, who had previously spoken with UC-1, and my observations on surveillance, I have learned the following:

        a.    At approximately 4:42 p.m., I observed the Equinox parked in the parking lot of the Bay Plaza Shopping Center, in the Bronx. At approximately 4:51, LUCKY entered the

Equinox. Approximately two minutes later, LUCKY walked away from the Equinox. I then lost sight of LUCKY.

      b. Based on my debriefing of UC-1's supervisor, I learned that after walking away from the Equinox, LUCKY entered UC-1's car, where LUCKY provided UC-1 with a substance that appeared to be heroin in exchange for approximately $7,840.

      c. At approximately 6:15 p.m., I observed LUCKY re-enter the Equinox, which exited the parking lot.

      d. I attempted to follow the Equinox, but lost sight of it. I then drove to the vicinity of 1725 Purdy Avenue in the Bronx, an address that I believed to be associated with RONNELL COOMBS, a/k/a "Chewy," the defendant. Shortly after I arrived at that location, I saw the Equinox arrive.

      e. LUCKY exited the Equinox and met with a male ("UM-1"), whom I could not identify due to poor lighting. LUCKY and UM-1 entered 1725 Purdy Avenue.

17. I have reviewed utility records for 1725 Purdy Avenue, Apartment 7E, and have learned that the Con Edison bill for that apartment is in the name of "Patricia Coombs."

18. I have spoken with an NYPD officer who reviewed an NYPD database and learned the following:

      a. An address of 1725 Purdy Avenue, Apartment 7E, was provided for RONNELL COOMBS, a/k/a "Chewy," the defendant, in connection with a prior arrest.

19. I have spoken with UC-1 and have learned that UC-1 has arranged to purchase approximately 800 grams of heroin from DAMON LUCKY, the defendant, on or about January 13, 2016.

20. I have reviewed NYPD lab reports and have learned the following:

      a. The brown substance purchased by CW-1 from DAMON LUCKY, the defendant, during the First Purchase tested positive for heroin and weighed approximately 55 grams.

      b. The brown substance purchased by CW-1 from LUCKY during the Second Purchase tested positive for heroin and weighed approximately 58 grams.

    c. The brown substance purchased by UC-1 from LUCKY during the Third Purchase tested positive for heroin and weighed approximately 114 grams.

  WHEREFORE, the deponent respectfully requests that warrants be issued for the arrests of DAMON LUCKY and RONNELL COOMBS, a/k/a "Chewy," the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

_____
IAN TOMAS
Special Agent
Federal Bureau of Investigation

Sworn to before me this
12th day of January, 2016.

_____
THE HONORABLE JAMES C. FRANCIS, IV
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK